## STATEMENT OF FACTS IN SUPPORT OF A COMPLAINT

United States law, Title 18, United States Code 2258A, requires Electronic Communication Service Providers (ECSs) and Remote Computer Service Providers (RCSs), including Internet Service Providers (ISPs) (collectively, "Providers") to report violations of federal laws regarding the sexual exploitation of children.  This law identifies the National Center for Missing and Exploited Children ("NCMEC") as the central repository for these reports.  The Providers generate "CyberTip" reports that they provide to NCMEC when a suspected violation of federal child exploitation laws has occurred. NCMEC analysts then review these "CyberTips" and forward this information to local law enforcement when they are able to determine the identity and/or location of the perpetrator.

The Metropolitan Police Department/Federal Bureau of Investigation Child Exploitation and Human Trafficking Task Force (CEHTTF) received one such CyberTip for a Microsoft Bing user, later identified as the defendant, Andrew Rodgers (herein "RODGERS"), which indicated that the user had downloaded eight images of child pornography to his Bing account.   NCMEC advised in their reports that the images reported had been a "hash match[1]" for known child pornography, and that an employee of Microsoft had viewed the child pornography before submitting the report to NCMEC.

---

[1] Microsoft has developed and uses an application called "Photo DNA" to compute and compare known hash values of images, video, and audio files to identify known images of child pornography, each of which are assigned unique hash values. PhotoDNA allows the user to identify known images of child pornography by using an algorithm to compare a suspect image's unique hash value to the hash values of known images of child pornography and identifying when an image matches a known images. This is identified as a "hash match."

1

The CyberTip report indicated that all eight images of child pornography had been downloaded using an internet protocol (IP) address of 207.172.89.165. The images of child pornography were downloaded between November 12, 2018 and January 5, 2019. A member of the CEHTTF reviewed the child pornography that had a hash match for known child pornography and found that the Microsoft user had downloaded one image of child pornography eight times during the above-listed times. The image repeatedly downloaded depicts a Caucasian pre-pubescent boy wearing no clothing except a scarf wrapped around his shoulders. The scarf covers only the child's shoulders, leaving his genitals exposed to the camera. The image depicts a child photographed in a well-documented series of child pornography known to law enforcement and that includes numerous other images of the same pre-pubescent boy depicted naked with his genitals exposed.

The IP address provided by the NCMEC CyberTip as having been used by the Microsoft user to download the child pornography resolved to RCN Telecom Services LLC. An agent with the CEHTTF issued an administrative subpoena to RCN Telecom Services LLC for subscriber information regarding this IP address. The IP address was identified as belonging to RODGERS, with a physical service address of ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬. RODGERS was an active customer of RCN Telecom Services LLC, and had been since November 28, 2015. A phone number of ▬▬▬▬▬▬ was provided by RCN Telecom Services LLC for RODGERS.

An FBI analyst with the CEHTTF issued an administrative subpoena for the phone number of ▮▮▮▮▮▮ to Verizon Wireless, which provided subscriber information and historical call records pursuant to the administrative subpoena. Verizon reported that the phone number is currently registered to ROGERS, and the account has been active since July 7, 2010. The account's billing address is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Agents with the CEHTTF interviewed RODGERS's brother, who indicated that he lives at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ alone and has since before the time that the images of child pornography were downloaded. A member of the CEHTTF also ran a criminal records check of RODGERS and found that he is an African-American male with a date of birth of ▮▮▮▮▮▮. RODGERS had a criminal record, including an arrest on January 31, 1997 for a felony child sex abuse charge which resulted in a conviction for a sex offense on May 28, 1997. RODGERS was required to register a Class B Sex Offender with a 10-year registration period after serving a term of incarceration.

A Deputy United States Marshal (DUSM) of the United States Marshals Service (USMS) was contacted to determine RODGERS's current sex offender registration status. The DUSM reported that RODGERS had been a "Class B" sex offender,[2] and had been registered from 2007 until his registration requirement terminated in 2017.

---

[2] To qualify as a Class B Sex Offender, an offender must have been convicted of, or found not guilty by reason of insanity of, a sex against a minor, that is, a person under the age of 18.

On May 16, 2019, a search warrant was issued by the Honorable Magistrate Judge Harvey of the United States District Court for the District of Columbia (Case no. 2019-SW-183) for the premises of ▮. The search warrant was issued for the recovery of evidence related to the violation of 18 U.S.C. 2252(A).

On May 22, 2019, members of the CEHTTF executed the search warrant at ▮. RODGERS was present in the home at the time of the search, and advised that he was the only resident of the home. RODGERS was advised at the time of execution of the warrant that he was not under arrest or in custody. RODGERS was also advised that the CEHTTF was only executing a search warrant at his residence, not an arrest warrant.

RODGERS agreed to a voluntary, non-custodial interview at the time of the execution of the search warrant regarding the downloading of child pornography from his residence. RODGERS was advised that he was not in custody, not under arrest, did not have to speak to the members of the CEHTTF, and could end the interview at any time. The interview was audio recorded and conducted in a vehicle outside of ROGERS's residence.

RODGERS reported that he resides at ▮ in Washington, D.C. RODGERS reported that he did not have a roommate, and that he had lived in the home for several years by himself. After being advised of the nature of the search warrant, ROGERS stated that he was in possession of "inappropriate" photographs of children. RODGERS reported that the images were kept on his laptop and cellular telephone, which were located in his bedroom. RODGERS reported that he had downloaded and saved the images from the internet by visiting websites that included keywords like "boys" or "boy models." RODGERS said that he had possessed some of these images on his devices since 2009. RODGERS stated that he believed that there were ten to fifteen images on his computer.

A member of the CEHTTF described to ROGERS the image of child pornography that had been flagged as a "hash match" by Microsoft, and asked if ROGERS recognized this image described. ROGERS advised that he believed he did recognize the image, and reported that the photograph was on his devices.

A member of the CEHTTF advised RODGERS that he was aware of his sex offender registration status, and ROGERS's prior conviction for a sex offense against a child. RODGERS reported that he had served his time regarding his conviction and registration, and advised that he had "turned over a new leaf." RODGERS reported that he has put in place safeguards to ensure he would not violate the law again, and advised that these safeguards included not babysitting children or working with children.

The CEHTTF members interviewing RODGERS were advised by the search team during the interview of RODGERS that clothes belonging to children had been located inside the home. The interviewers asked RODGERS why he would have children's clothing in the home, and RODGERS advised that he had been babysitting recently. RODGERS reported that he had, in fact, babysat children the previous day.

RODGERS reported that the children that he babysat are his nephews, a six-year-old male (Herein "witness #1) and an eight-year-old male (Herein "complainant #1). RODGERS reported that he had not engaged in sexual abuse of either child, but said that the children would have their own side of the story to tell.

RODGERS was asked what would happen if he was in an unsupervised place with a male child that he could do anything with, without fear of repercussions. RODGERS advised that there was a high percentage that "something" would happen.

While RODGERS was being interviewed, members of the FBI Computer Analysis Response Team (CART) conducted a forensic preview of the electronic devices located within RODGERS's home to include a black Hewlett-Packard laptop which was recovered in RODGERS's bedroom.  During the preview, the CART members observed numerous images in the "Pictures" folder under the user name "Andrew Rogers," or a variation of that name.  The examiner advised that some of the images appeared to be child pornography, and asked for a CEHTTF member to review the files.  Members of CEHTTF reviewed the files and observed numerous images of prepubescent children, both clothed or partially clothed.  The images depicted children's genitalia and/or children were engaged in sex acts.

On May 23, 2019, complainant #1 and witness #1 were forensically interviewed at Safeshores located at the Children's Advocacy Center (CAC) in Washington, D.C.  The interviews were conducted with parental consent by trained forensic interviewers as a precaution due to the nature of ROGERS past conviction, his statements during his interview and the nature of the investigation regarding child pornography.

Complainant #1 (an eight-year-old male) advised during the interview that he spent time at his uncle's place.  Complainant #1 reported that his uncle's first name is "Andrew" and his last name is "Rodgers."  Complainant #1 reported that he had gone to his uncle's place for several years, and that he often liked going to his uncle's place.  Complainant #1 reported that sometimes he did not like going to his uncle's place because his uncle "messed with him." Complainant #1 reported that his uncle would mess with him under the covers while at his uncle's apartment.  Complainant #1 reported that his uncle messed with him in the living room of the home, on the floor near the television.

Complainant #1 disclosed that his uncle would "mess with him" by laying on Complainant #1's back, and putting his weight on him. Complainant #1 reported that this would make it difficult for Complainant #1 to breathe, and that it would hurt. Complainant #1 further reported that his uncle would take his "front private part," which he identified as the body part that he goes to the bathroom with, and put it inside Complaint #1's hole on his back. Complainant #1 reported that RODGERS would go too hard and deep when he did this, and that he felt like it would bleed. The complainant advised that this felt weird inside of him, and that he did not like it.

Complainant #1 reported that his uncle had been doing this to him since he was in first or second grade, and that the last time it had happened, Complainant #1 was in third grade. Complainant #1 is in third grade now. Complainant #1 could not remember the frequency of the sexual assaults, but reported that he had been "messed with" more than two times.

Complainant #1 reported that RODGERS was probably a good person at first, and this just started happening out of nowhere. Complainant #1 advised that he had not told his mother because he was afraid she would be mad, and reported that he had not told anyone about RODGERS "messing with him." Complainant #1 additionally stated that he was unsure how anyone would know about what had happened to him because he had told no one about it.

Witness #1 (a five-year-old male) was interviewed forensically at Safeshores separately from Complainant #1. Witness #1 reported that he spent time with Complainant #1, his brother, and with several other children that were later identified as half-brothers and half-sisters at ROGERS's house. These other children were later identified by law enforcement as children that RODGERS babysat. Witness #1 did not make any disclosures of sexual abuse or being a witness to sexual abuse.

7

Two additional children identified as having been babysat by RODGERS, a six-year-old female (herein "Witness #2) and a nine-year-old female (herein "Complainant #2"), were subsequently forensically interviewed at the CAC by a Safeshores forensic interviewer. Complainant #2 reported during the forensic interview that she has a younger sister, Witness #2, and other related siblings, to include Complainant #1 and Witness #1. Complainant #2 offered that she was being interviewed because of Andrew, who she later identified verbally as her uncle, Andrew Rodgers. Complainant #2 reported that her mother had asked her recently if RODGERS had touched her.[3] Complainant #2 told her mother that RODGERS had not touched her. However, the following day before the forensic interview was conducted, Complainant #2 decided to disclose to her mother that RODGERS had, in fact, touched her. Complainant #2 told the interviewer that she had not told her mother initially because she did not want people to think RODGERS was a bad person, and did not want people to think her mother could not take care of her.

Complainant #2 disclosed during the interview that RODGERS would touch her "private part" with his hand under her clothes, and on her skin. Complainant #2 identified her private part as "the place that people use to go to the bathroom." Complainant #2 then stated that RODGERS would penetrate her butt with his "private part," which she also identified as "the place where people pee from." Complainant #2 said that RODGERS body would move like a "wave" that was pushing on her back and bottom.

---

[3] Complainant #2's mother was made aware of the interviews of Complainant #1 and Witness #1 by a mutual family member and asked Complainant #1 the day before the forensic interview if ROGERS had done anything to her.

Complainant #2 reported that the touching and penetration would occur in the living room of RODGERS's home.  Complainant #2 said that they would be sitting on a couch in the living room when the assaults occurred.  Complainant #2 disclosed that she felt like she could not do anything because "he wasn't listening to me" and "he wouldn't stop."  Complainant #2 stated that all of the sexual assaults occurred when she was nine years old.

        Respectfully submitted,

_____
Edward E. Moschella
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me on this <u>24th</u> day of May, 2019.

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE